BILLY J. WILLIAMS, OSB 901366
United States Attorney
District of Oregon
**GARY Y. SUSSMAN, OSB 873568**
Assistant United States Attorney
gary.sussman@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, Oregon  97204-2902
Telephone:  (503) 727-1000
Attorneys for the United States of America

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA** | No. 3:21-mj-00036 |
| v. | **GOVERNMENT'S MEMORANDUM ON CONTINUED DETENTION PENDING TRIAL** |
| **ALEXANDER WILLIAM WIESE**, | |
| Defendant. | |

Defendant is charged with purchasing child pornography from a dark web site, the sole purpose of which is to peddle images and videos depicting the graphic sexual abuse of children.  He made eleven separate purchases from that website in just over one month.  In addition, he has repeatedly sought jobs that put him in direct contact with adolescent children, and has admitted engaging in inappropriate sexual activities with three teenage girls, one of which he paid to have sex with.  Defendant poses an ongoing danger to the community and should remain in custody pending trial.

**Government's Memorandum on Continued Detention Pending Trial**                                            Page 1

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

Homeland Security Investigations agents identified a "hidden service" website on the dark web that was devoted to peddling hard core child pornography. There is simply no question about the website's purpose. The name of the site includes an explicit reference to child pornography, and this banner is prominently displayed on the site:

> This site contains a collection of immoral materials for acquaintance and satisfaction of sick fantasies. If you know what it is and against it, just leave the site.

HSI's investigation revealed that defendant purchased eleven separate packets of hard-core child pornography from the website between September 14, 2020, and October 19, 2020.[1]

Defendant knew what he was buying. The titles of the some of the packets he bought were highly suggestive of child pornography, including "cumcum_s29," "preteens_cumming_s4," and "LolitasHouse_s5." Defendant was able to – and *did* – preview screenshots of the packets he bought. The screenshots were found on one of his computers.

Agents executed a search warrant for defendant's person and residence on February 8, 2021. They seized several laptop computers, a Kindle tablet, and defendant's cell phone. One of the computers was open and running. A micro SD card reader was sitting right next to that computer. However, agents did not find any micro SD cards during the search.[2]

---

[1] The purchases occurred on September 14, September 15, September 16, September 17, September 24, September 28, September 30, October 2, October 8, October 15, and October 19, 2020. The website's name is being withheld to protect the integrity of an ongoing investigation

[2] Micro SD cards are very small and are easily concealed, but can store large amounts of data.

Agents interviewed defendant at the time of the search. After being advised of his rights, defendant admitted purchasing, downloading, and viewing multiple packets of child pornography from the website. He also admitted having a sexual relationship while in his 20s with a girl who he thought was 18, but who turned out to be 17. He denied having any other sexual contact with children. However, following a failed polygraph exam, he admitted engaging in sexual activities with two other adolescents – a teenage girl who he paid to have sex with, and a teenage girl he met at a party. He denied engaging in sexual activity with younger children.

A preliminary computer forensic examination revealed that defendant had viewed child pornography – including the screenshot previews from the child pornography website – on a computer that was up and running when agents executed the search warrant. It also revealed that defendant had viewed child pornography that was stored on a micro SD card only ten hours before agents served the warrant. An HSI agent spoke to defendant by phone, told him about the SD card, and asked defendant to turn it over to the agent. The agent further advised defendant that he could not give it to anyone else (because that would constitute distributing child pornography) or attempt to destroy it (which would amount to obstruction of justice). Defendant said he understood. The agent asked defendant to bring the SD card with him when he came to the HSI office to retrieve seized property that HSI was ready to release.

Defendant arrived to claim his property but did not bring the micro SD card. Agents then obtained a second search warrant, which they executed on February 10, 2021. They

**Government's Memorandum on Continued Detention Pending Trial**         **Page 3**

did not locate any micro SD cards, although they did find (but have not searched) other digital storage devices and an old cell phone that had a shattered screen. When agents told defendant that they would be searching for the missing micro SD card, he replied, "It's not here."

Defendant was taken into custody following the search. He is charged by criminal complaint with one count of receiving child pornography and one count of accessing with the intent to view child pornography. He had his initial appearance on February 11, 2021. He did not seek release at that time. A detention review hearing was set for February 18, 2021.

The HSI case agent has been looking into defendant's background. During the first search, defendant told agents he had recently been hired by the Multnomah Education Service District as an outdoor science program instructor for sixth to eighth graders. He had only been employed for one week and had not yet taught any students. He resigned from that position following the execution of the first search warrant.

During the summer of 2020, he worked as a summer camp instructor at the Oregon Museum of Science and Industry (OMSI). He worked with children in grades K – 8. He also worked as an outdoor science instructor for the Emerald Cove Outdoor Science Institute in Running Springs, California, from October 2017 through April 2018, where he worked with fifth and sixth graders. Defendant lived onsite in cabins with the children, who participated in three- to five-night overnight programs. There were no complaints or allegations of sexual misconduct.

**Government's Memorandum on Continued Detention Pending Trial**            **Page 4**

Defendant also volunteered as an assistant music instructor at the Da Vinci Arts Middle School, which is part of the Portland Public School District. Defendant worked with sixth to eighth graders several times per week from September 2012 through May 2015. His volunteer status was revoked by the school district and he was permanently prohibited from being on any school district property for posting what the school district described as "terroristic-type statements" on Facebook. Nonetheless, after being banned from school property, defendant visited Chapman elementary school in Northwest Portland on October 28, 2019, and the Creative Science school in Southeast Portland on December 4, 2019. The reasons for those visits are unknown.

A preliminary review of defendant's cell phone revealed numerous photos of adolescent girls, which appear to have been captured from social media posts. None of the images constitute child pornography, but there is also no indication that defendant knows or has personal relationships with any of them.

Pretrial Services initially recommended detention, due largely to the fact that they had not interviewed defendant and had no meaningful information about him. They are now recommending release on conditions that include home detention with GPS monitoring. The government objects. Defendant should remain in custody.

## II.     DISCUSSION

The Bail Reform Act provides that defendants shall be detained pending trial where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C.

**Government's Memorandum on Continued Detention Pending Trial**          **Page 5**

§ 3142(e). The government bears the burden of establishing danger to the community by clear and convincing evidence; risk of flight need only be proved by a preponderance of the evidence. *United States v. Aitken*, 898 F.2d 104, 107 (9th Cir. 1990); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986). The Federal Rules of Evidence do not apply in pretrial detention proceedings. Fed. R. Evid. 1101(d)(3); 18 U.S.C. § 3142(f). Thus, the parties may present evidence by proffer or through hearsay. *Winsor*, 785 F.2d at 756. *See also United States v. Bibbs*, 488 F. Supp. 2d 925, 925-26 (N.D. Cal. 2007).

Where, as here, there is probable cause to believe that a defendant committed a specified offense against a minor victim (including receiving child pornography), a rebuttable presumption arises that "no condition or combination of conditions of release will reasonably assure the appearance of the person as required and the safety of the community. 18 U.S.C. § 3142(e)(3)(E). The burden shifts to the defendant to rebut the presumption. *United States v. Carbone*, 793 F.2d 559, 560 (3d Cir. 1986); *cf. United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008) (noting that in a terrorism case involving the presumption, "the presumption shifts a burden of production to the defendant, [but] the burden of persuasion remains with the government").

Even if it is rebutted, however, the presumption does not disappear; it continues to carry evidentiary weight. *See Hir*, 517 F.3d at 1086 ("The presumption is not erased when a defendant proffers evidence to rebut it; rather the presumption remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)") (internal quotations and citation omitted). Other

factors to consider include: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a minor victim; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including the person's character, physical and mental condition, family and community ties, employment, financial resources, past criminal conduct, history relating to drug or alcohol abuse, and supervision status at the time of the current offense; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.  18 U.S.C. § 3142(g); *Hir*, 517 F.3d at 1086.[3]  Those factors weigh in favor of continued detention in this case.

### A.     *Nature and Circumstances of the Offense Charged.*

Defendant is charged with receiving child pornography and accessing it with the intent to view it.  Although the complaint alleges a single, all-encompassing count, defendant actually committed *eleven separate offenses*, by purchasing hard-core child pornography eleven separate times on eleven separate days in just over one month.  He knew what he was buying, and he knew the nature of the website he was buying it from.

Receiving child pornography is a statutory presumption offense.  It is a serious offense in the best of circumstances.  It is even more serious in the circumstances present here, in which defendant affirmatively and repeatedly purchased it, downloaded it, and

---

[3] Child pornography offenses are considered crimes of violence under the Bail Reform Act.  *See* 18 U.S.C. § 3156(a)(4)(C) (defining the term "crime of violence" to include "any felony under chapter 109A, 110, or 117" of Title 18.  Child pornography offenses are in chapter 110.

**Government's Memorandum on Continued Detention Pending Trial**               **Page 7**

viewed it – and then attempted to obstruct justice by hiding or disposing of the micro SD card even after being told that doing so could amount to another offense.

   B.   *The Weight of the Evidence.*

The evidence is overwhelming. There is no question that defendant bought child pornography eleven times from a dark web site devoted exclusively to selling it for a profit. The purchase records are clear, and defendant admitted doing it.

   C.   *Defendant's History and Characteristics.*

Defendant has no criminal history and was not on supervision at the time of the offenses. His parents live in Portland. Nonetheless, in addition to the details of the charged offenses, there are some very troubling aspects to defendant's history and character.

First, he admitted having inappropriate sexual relations with three separate teenaged girls – once for money. Even then, he minimized his conduct at first, initially claiming that there had only been one inappropriate sexual relationship. Second, his employment history is spotty, and much of it involves positions that put him in direct contact with adolescent children. At the Emerald Cove Outdoor Science Institute, at OMSI, at Da Vinci Middle School, and most recently at the Multnomah Education Service District. He was banned from Portland Public Schools property, yet he went onto two school campuses anyway. He had numerous non-pornographic images of adolescent girls on his phone – girls whose images he likely grabbed from social media sites. And of course, he purchased, downloaded, and viewed child pornography. Thus, it appears that defendant has a sexual interest in children that he has acted on three times in the past.

**Government's Memorandum on Continued Detention Pending Trial         Page 8**

Finally, despite being asked for the micro SD card and being told that he could neither transfer it nor attempt to destroy it, defendant did so anyway. His unwillingness to turn over the card suggests an unwillingness to fully admit and accept responsibility for his unlawful conduct, and more importantly, an unwillingness to comply with directions.

### D.     *The Nature and Seriousness of the Danger Posed by Release.*

Defendant has already engaged in at inappropriate sexual activity with at least three teenage girls. He repeatedly purchased, downloaded, and viewed child pornography. He was viewing child pornography as recently as ten hours prior to the execution of the first search warrant. He appears to have a sexual interest in children, which he has acted on three times before. He poses a significant danger to the community if released.

Pretrial Services is recommending release on conditions that include home detention and GPS monitoring. But defendant was at home when he committed the instant offenses. And while GPS monitoring can tell Pretrial Services where defendant is, it cannot tell them who he is with or what he is doing. Moreover, since the onset of the COVID pandemic, the level of actual supervision of released defendants (especially home visits) has been severely curtailed. Given defendant's repeated history of inappropriate sexual activities with underage girls, that is simply too much of a risk to bear. Defendant should remain in custody pending trial.

/ / /

 / / /

/ / /

## III. CONCLUSION

Given his history of inappropriate sexual activity with minors, his questionable character and employment history, his sexual interest in children, and his repeated purchases of child pornography, defendant presents an unacceptable risk to the community. Defendant should remain in custody pending trial.

DATED: February 18, 2021.

Respectfully submitted,

BILLY J. WILLIAMS
United States Attorney

*/s/ Gary Y. Sussman*
GARY Y. SUSSMAN, OSB 873568
Assistant United States Attorney